# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

DON BOYD                                                      PLAINTIFF


VS.                                    CIVIL ACTION NO. 3:07-cv-117-WHB-LRA


KLLM TRANSPORT SERVICES, INC.;
TERRY MATTHEWS; THOMAS CARTER;
UNKNOWN CARL B.; UNKNOWN RACHEL;
KLLM DOE PERSON(S); SEC DOE PERSONS(S);
SEC TRAINING CENTER; and "J.B." UNKNOWN            DEFENDANTS


## OPINION AND ORDER

This cause is before the Court on several pleadings filed by the parties in the above referenced litigation. Having considered the pleadings, the attachments thereto, as well as supporting and opposing authorities, the Court finds:

Plaintiff's Motion for Continuance is not well taken and should be denied.

Plaintiff's Request to Take Judicial Notice is well taken and should be granted.

The Motion of Defendant, Southeastern Career Training Centers, Inc., to Strike Plaintiff's Motion for Partial Summary Judgment is not well taken and should be denied.

The Motion of Defendant, Southeastern Career Training Centers, Inc., for Summary Judgment is well taken and should be granted.

Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment is not well taken and should be denied.

Plaintiff's Motion for Partial Summary Judgment is not well taken and should be denied.

## I. Factual Background and Procedural History

On February 23, 2007, Plaintiff, Don Boyd ("Boyd"), who is proceeding in this litigation *pro se*, filed a lawsuit in this Court. According to the Complaint, in the Fall of 2005, Boyd responded to an advertisement seeking truck drivers that had been placed in a South Carolina newspaper by Defendant, KLLM Transport Services, Inc. ("KLLM"). Although Boyd had graduated from trucking school in 1993, KLLM required him to complete "refresher" training. The training was provided by Defendant, Southeastern Career Training Centers, Inc. ("SEC"), which is located in Flowood, Mississippi. According to Boyd:

> Because (a) a large percentage of SEC students are KLLM recruits, (b) SEC is the only school through which KLLM trains prospective drivers, and (c) KLLM – not SEC – decides the tenure of KLLM recruits at SEC, it can be said SEC is a KLLM school or is an arm of KLLM.

Compl. at ¶ 3. Boyd apparently began his training on or about November 28, 2005. According to Boyd, the training period for new student drivers was fifteen days. Boyd alleges that while he was required to complete eleven days of training, other students who lacked prior training and had less experience than him, were only required to complete five days of training.

Boyd also claims that the refresher training was completely unnecessary because there had not been any significant changes in tractor-trailer handling procedures than those he had learned in 1993, and only minimal changes in the "Hours of Service Regulations" had been made between 1993 and 2005. Based on the purported need that he take refresher training, Boyd claims he was subjected to a "fleecing and unnecessary detainment ... under color of law" because KLLM never intended to hire him as a driver. See Compl. at ¶ 16. Specifically, Boyd alleges that if he ended the refresher training before being released by SEC, he would have been required to fund his own way back to South Carolina and immediately pay for the training he had received. Boyd also alleges that although he signed a contract indicating that he had completed the refresher training with SEC, the contract was signed under duress and is therefore void.

According to Boyd, after his refresher training was completed, KLLM undertook steps to ensure that he would quit working as a driver for that company. For example, Boyd alleges that on certain long hauls, KLLM paired older drivers (a/k/a "trainers") who were paid according to the total number of miles the truck was driven, with new drivers (like him), who were paid according to the number of hours they actually drove the truck. Thus, the trainers with whom Boyd was paired earned as much as $2000 per week, while he was only paid $50 per day. Boyd claims this trainer/new driver pairing

3

system, under which new drivers were inadequately paid and "abused", was a tool used by KLLM to ensure that the new drivers would quit. Boyd further alleges that because of the pairing system, KLLM would have never hired him or promoted him to the position of a solo driver. Other actions allegedly taken by KLLM to force Boyd to quit include: (1) requiring him to undergo six additional weeks of on-the-road training despite his prior education and experience; (2) pairing him with a trainer, namely Terry Matthews ("Matthews"), who allegedly exhibited "behaviors of a post-war veteran", including unexplained mood-swings and disproportionate reactions, and who purportedly disregarded his safety and welfare;[1] (3) leaving him stranded in Georgia during the Christmas holidays; (4) refusing his telephones calls and voice messages requesting immediate assistance and to be paired with another trainer; (5) refusing to offer or provide

_____

[1]   Boyd claims that Matthews: (1) refused to allow him to run either the heater or air conditioner while sleeping or when the truck was off the road which caused him to become ill; (2) refused to seek medical treatment when ill thereby exposing him to pathogens; (3) chided him for giving directions to other motorists; (4) required that he falsify their log book; (5) berated him for questioning orders; (6) risked his safety by pulling the truck onto the shoulder of the road to sleep at night; (7) verbally insulted and humiliated him in front of loading dock personnel; (8) criticized his driving ability; (9) played mind games with him; (10) refused his request to drive to another truck stop in order to find more sanitary bathrooms; (11) required him to drive over his maximum eleven hour limit; and (12) accused him of masturbating in the truck, of donning womens' apparel, and living "a double-life as a female-role homosexual" during his off time.

physical/psychological treatment for "the injuries directly caused by" the behavior of its agents; and (6) requiring him to work in unsafe conditions.

On January 24, 2006, while in California, Boyd was allegedly concerned that Matthews's "behavior was escalating to physical violence" and, therefore, refused to continue driving with him. Boyd also purportedly again requested that he be paired with a different trainer. After his request for a different trainer was denied, Boyd traveled to Alabama using a bus ticket that had been purchased for him by KLLM. Thereafter, between January 27 and 30, 2006, Boyd allegedly contacted KLLM on several occasions again requesting that he be paired with a different trainer. On January 31, 2006, Boyd was allegedly told that KLLM considered his act of refusing to drive with his assigned trainer (Matthews), and leaving the truck he was assigned while in California, as signifying his intent to terminate his employment with that company. As understood by the Court, Boyd's employment with KLLM ended sometime between January 26, 2006, and January 31, 2006.

Based on the foregoing allegations, Boyd contends:

KLLM's indifference to events surrounding my unboard [in California]; KLLM's holding me for 11 days of unneeded training; KLLM's protracted training period with Terry Matthews; KLLM's eagerness to assume my quit; and KLLM's immediate threats of debt collection for unneeded training are proof of KLLM's first lack of intent to hire me; are proof of a scheme to make me and [sic] an inexhaustible supply of others indebted to KLLM; are proof of a scheme and a "cheap" way to haul produce and pocket per mile what a per-mile driver should be paid.

5

Compl. at ¶ 172.  Boyd further alleges:

> Matthews and KLLM are liable for the following and other unidiscerned [sic] counts: breach of contract or implied contract; breach of fiduciary duty; negligence; intentional infliction of emotional distress, harassment, sexual harassment, conspiracy, unfair trade practices, misrepresentaion, reckless endangerment, endangerment, whistleblower violations, wrongful denial of medical attention.

Compl. at ¶ 174.  Based on these claim, Boyd seeks compensatory and punitive damages in the amount of $3,200,000.

On October 9, 2008, the Court entered an Order whereby KLLM was dismissed from this lawsuit, without prejudice, based on Boyd's failure to timely serve process.  See Opinion and Order [Docket No. 36].  On December 12, 2008, the Court held a telephonic pretrial conference with Boyd and counsel for SEC.  At the conclusion of the conference, the Court continued the trial date in this case to allow Boyd time to respond to the Motion for Summary Judgment that had been filed by SEC.  See [Docket No. 47].  In addition to filing his Response, Boyd filed several other Motions, each of which will be addressed below.

## II.  Discussion

### A.  Motion for Continuance

Through his first Motion, Boyd requests a continuance in order to "give appointed counsel time to take depositions and discovery that can resolve this action on summary judgment and avoid a full trial."  See Motion [Docket No. 48].  The record shows, however,

that Boyd's motions seeking court appointed counsel have previously been denied, as was his motion seeking to compel production of documents from SEC.  See Orders of December 29, 2008, and February 11, 2009.  As Boyd's requests for court appointed counsel have previously been denied, the Court finds that his motion for a continuance to permit court appointed counsel to prepare this case should likewise be denied.


**B.  Motion to Take Judicial Notice**

Through his Request to Take Judicial Notice, Boyd requests that the Court apply the dictionary definitions of the terms "mill" and "refresher".  As the Court generally applies the dictionary definitions to common terms, the Court finds this Request should be granted.


**C.  Motion to Strike**

In addition to responding to the Motion of SEC for Summary Judgment,[2] Boyd filed a Motion for Partial Summary Judgment against SEC.  SEC has moved to strike Boyd's Motion for Partial Summary Judgment on the grounds that it was filed after the deadline imposed by the Case Management Order for filing dispositive motions had expired.  As Boyd is proceeding in this case *pro se*, and as the

---

[2]  The Court has construed Boyd's "Motion in Opposition to Defendants' Motion for Summary Judgment" [Docket Nos. 55 & 60] as his Response to the Motion for Summary Judgment.

Court finds SEC will not be prejudiced by the untimely filing, the Court additionally finds that the Motion to Strike should be denied.

**D.  Motions for Summary Judgment**

**1.  Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case

which it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The movant need not, however, support the motion with materials that negate the opponent's claim.  Id.  As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim.  Id. at 323-24.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial.  National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

**2.  Motion of SEC for Summary Judgment**

In his Complaint, Boyd does not allege any specific claims against SEC.  See Compl. at ¶ 174 (alleging claims only against Matthews and KLLM).  Boyd does, however, allege that because "(a)

9

a large percentage of SEC students are KLLM recruits, (b) SEC is the only school through which KLLM trains prospective drivers, and (c) KLLM – not SEC – decides the tenure of KLLM recruits at SEC, it can be said SEC is a KLLM school or is an arm of KLLM." See Compl. at ¶ 3. Construing these allegations in a manner most favorable to Boyd, the Court finds that he is alleging that SEC is a subsidiary – that is "an arm" – of KLLM, which can be held liable for the torts committed by KLLM.

Under Mississippi law, "[t]he general rule of law basic to the concept of the corporation is that the distinct corporate identity will be maintained unless to do so would subvert the ends of justice." Johnson & Higgins of Miss., Inc. v. Commissioner of Ins. of the State of Miss., 321 So. 2d 281, 284 (Miss. 1975). In order to pierce corporate veils in the parent/subsidiary context, the Court considers whether:

> (1) The parent corporation owns all or a majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal

10

requirements of the subsidiary as a separate and independent corporation are not observed.

Castillo v. M.E.K. Const., Inc., 741 So. 2d 332, 340 (Miss. Ct. App. 1999)(quoting North Am. Plastics Inc. v. Inland Shoe Mfg. Co., Inc., 592 F. Supp. 875, 879 (N.D. Miss. 1984)).

In the present case, Boyd has not produced any evidence to show that SEC is, or should be, treated as a subsidiary of KLLM. In addition, SEC has produced evidence that while it entered a contract with KLLM to provide training to prospective truck drivers in November of 2005, and that KLLM contractually specified the length and type of training its drivers were to receive, see Mot. for Summ. J., Ex. C (Hawkins Aff.) at ¶ 2; id. Ex. B (Redd Aff.) at ¶ 9, respectively, that it is has at all times been a corporation duly organized under the laws of Mississippi; it is a separate and distinct legal entity from KLLM; its owners, shareholders, officers, and directors are not affiliated with KLLM; there does not exist a common ownership interest or any common board members between SEC and KLLM; SEC operates its business wholly independently from KLLM; there is no day-to-day involvement between SEC and KLLM regarding business activities or the manner in which the corporations are run; and SEC has contracted with other companies to provide driver training. See id., Ex. A (Sullivan Aff.), at ¶¶ 2, 6; Ex. B (Redd Aff.) at ¶¶ 3-7.

Based on the evidence before it, the Court finds that Boyd has

11

failed to show that there exists a genuine issue of material fact
with regard to whether the corporate veils of SEC and/or KLLM
should be pierced, or that SEC can be held liable for the torts
allegedly committed by KLLM.

Second, after construing the allegations in the Complaint in
Boyd's favor, the Court finds that he may be alleging a conspiracy
claim against SEC.  Under Mississippi law:

> 'a conspiracy is a combination of persons for the purpose
> of accomplishing an unlawful purpose or a lawful purpose
> unlawfully.'  Levens v. Campbell, 733 So. 2d 753, 761
> (Miss. 1999).  Where a civil conspiracy gives rise to
> damages, a right of recovery may arise.  Roussel v.
> Hutton, 638 So. 2d 1305, 1315 (Miss. 1994).  It is
> elementary that a conspiracy requires an agreement
> between the co-conspirators. See Brown v. State, 796 So.
> 2d 223, 226–27 (Miss. 2001) (conspiracy is "a combination
> of two or more persons to accomplish an unlawful purpose
> or to accomplish a lawful purpose unlawfully, the persons
> agreeing in order to form the conspiracy," and the
> "persons must agree ... in order for a conspiracy to
> exist").

Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So. 2d 777, 786
(Miss. 2004).

As understood by the Court, Boyd alleges that a conspiracy
existed between SEC and KLLM for the purposes of training, but not
hiring truck drivers.  See e.g. Mem. in Supp. of Resp. to Mot. for
Summ. J. [Docket No. 60] at 2.  Again, as understood by the Court,
Boyd argues that KLLM wanted a steady supply of new drivers to pair
with its on-the-road trainers.  This pairing allowed KLLM to
increase its profits by transporting goods farther and faster
(having two drivers in the truck, both of whom could drive up to

the maximum permitted hour limit) for less money (new drivers being paid for the number of hours they actually drove, while trainers were paid by the mile regardless of who drove).  In order to perpetuate the pairing system, KLLM allegedly subjected the new drivers to abusive conditions thereby forcing them to quit before they completed their on-the-road training.  By forcing them to quit, KLLM was not thereafter required to hire them as solo drivers, who would be paid at the higher, per-mile rate.  According to Boyd, in order to perpetuate the pairing system, KLLM needed a steady stream of new recruits.

As for the involvement of SEC in the alleged conspiracy, Boyd argues:

> If only by large percentage of turnover/enrollment of new KLLM students, SEC had reason to know of its complicity in a mill; SEC's complicity and knowledge can be reasonably inferred from Plaintiff's "biding time" at SEC regardless of whether Plaintiff (students) actually was improved by the training or was taught anything; it could be reasonably inferred that no offering of credentials after the training it was a mill and SEC knowledge thereof – as "no diploma" would indicate "no *training*" occurred; it could be reasonably construed that SEC's acquiesce, willingness and instance upon "training" Plaintiff for what Plaintiff already held experience and diploma/certificate in proves SEC was a knowing partaker in conspiracy and mill; it could be reasonably construed that since an expected KLLM backing technique was not even on the program at SEC; SEC reasonably knew it was part of a mill: That is, it didn't matter, because SEC knew KLLM didn't intend to hire you anyhow, only to "train" you – and bill you; it could be reasonably construed that even if SEC and KLLM made an appearance of compliance with any "letter of the law", training was nevertheless sham for falling short of *intent* of any legislation.  Not to mention the perpetual "training cycle" was of great financial gain to SEC, giving SEC

> incentive to have part in, perpetuate, and to not end the mill although SEC actors saw day after day with their own eyes that their mill was of such mental suffering to Plaintiff – motive.

See Mem. in Supp. of Resp. to Mot. for Summ. J., 2-4 (alterations in original)(citations to Complaint omitted).

In moving for summary judgment on Boyd's conspiracy claim, SEC has offered evidence that it is in the business of training new drivers, training drivers with valid C.D.L. licenses, and providing refresher courses. See Mot. for Summ. J., Ex. B (Redd Aff.) at ¶ 8. SEC has additionally offered evidence showing that it had entered a contract with KLLM to provide training for prospective KLLM truck drivers, see id. Ex. C (Hawkins Aff.) at ¶ 2, and that the training provided under the contract, including the length and nature of the training, was determined by KLLM. Id. Ex. B (Redd Aff.) at ¶¶ 9, 10. Upon completion of the training, SEC would send the original "Certificate of Completion" evidencing that the recruit had completed the required training directly to KLLM and, thereafter, SEC had no further involvement or contact with the recruit, id. at ¶¶ 11, 12, and had no involvement with the employment procedures used by KLLM. Id., Ex. C (Hawkins Aff.), at ¶ 13.

Although, Boyd disputes the evidence proffered by SEC, he has not presented any evidence to show that SEC and KLLM had conspired with one another, and he has not presented any evidence to show that SEC acted unlawfully. At best, Boyd's arguments are supported

14

by references to the Complaint and to general allegations in his affidavits, both of which are insufficient to create a genuine issue of material fact for the purposes of summary judgment. See Celotex, 477 U.S. at 324 (requiring the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."). Having reviewed the pleadings, the Court finds that Boyd has failed to show that there exists a genuine issue of material fact with regard to either whether SEC and KLLM conspired to create a training cycle, or whether these companies thereafter acted unlawfully or with an unlawful purpose.

Having found that Boyd has failed to show that there are fact questions regarding whether the corporate veils of SEC and/or KLLM should be pierced, or whether a conspiracy existed between SEC and KLLM, the Court finds that the Motion of SEC for Summary Judgment should be granted, and that Boyd's Motion in Opposition to Defendants' Motion for Summary Judgment should be denied.

In addition to responding to the Motion of SEC for Summary Judgment, Boyd filed a motion seeking partial summary judgment against this defendant. First, Boyd has moved for partial summary judgement on his conspiracy claim against SEC. For the reasons stated above, in granting summary judgment in favor of SEC on the conspiracy claim, Boyd's Motion for Summary Judgment on that claim will be denied.

Boyd has also moved for summary judgment on claims including

15

unfair trade practices, fraudulent inducement, fraudulent concealment, constructive discharge, breach of contract, and tortious breach of contract.  The Court finds that as Boyd did not assert any of these claims directly against SEC in his Complaint, the unfair trade practices, fraudulent inducement, fraudulent concealment, constructive discharge, breach of contract, and tortious breach of contract claims he argues in response to the Motion of SEC for Summary Judgment are not properly before the Court.  See Cutrera v. Board of Supervisors of La. State Univ., 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").  Accordingly, the Court finds that Boyd is not entitled to summary judgment on any of these claims, and that his Motion for Partial Summary Judgment should be denied.

**E.  Dismissal of Non-served Defendants**

This issue is before the Court *sua sponte*.

The record shows that Boyd named Terry Matthews, Thomas Carter, "Carl B", and "Rachel" as defendants in this case.  On July 27, 2007, United States Magistrate Judge Linda R. Anderson entered a Show Cause Order based on Boyd's failure to have process served on the defendants within the 120-day period permitted under Rule 4(m) of the Federal Rules of Civil Procedure ("FRCP").  See Show Cause Order [Docket No. 4].  By that same Order, Boyd was directed

to explain to the Court, on or before August 10, 2007, the reason process had not been served, and to show cause as to the reason the defendants had not been served within the requisite 120-day period. Boyd was expressly warned that a failure to show cause would result in the dismissal of his Complaint without further notice. Id. Upon Boyd's failure to respond to the Show Cause Order, Judge Anderson entered a Report and Recommendation, recommending that his Complaint be dismissed based on his failure to have process served by the United States Marshal within the 120-day period permitted by FRCP 4(m), and for lack of prosecution. See Report and Recommendation [Docket No. 5].

On September 28, 2007, in response to the Report and Recommendation, Boyd filed a motion seeking an extension of time in which to have process served. See Motion [Docket No. 6]. On November 13, 2007, Judge Anderson entered an Order temporarily withdrawing her Report and Recommendation, and granting Boyd's motion for an extension of time. See Order [Docket No. 9]. In her Order, Judge Anderson expressly advised Boyd that while she had previously directed the United States Marshal to serve process, process would only be served "upon receipt of the summons forms from the Plaintiff setting forth the proper address of the Defendants", that he "was directed to provide this information to the United States District [Court] Clerk over seven (7) months ago", and that "the Court's records reflect that Plaintiff failed

to do so." <u>Id.</u> Notwithstanding Boyd's failure to provide the Clerk with the required information, Judge Anderson granted him an extension, up to and including November 30, 2007, to provide the addresses of the defendants to the Clerk of Court. Judge Anderson then entered the following Order: "[U]pon receipt of the summons forms from Plaintiff, setting forth the proper address of Defendants, the United States District [Court] Clerk is hereby directed to issue process to Defendants requiring responses. The United States Marshal is hereby ordered to serve process on Defendants pursuant to 28 U.S.C. §1915(c)." <u>Id.</u> On November 30, 2007, the Clerk of Court issued summons as to Defendants SEC, KLLM, and David L. Redd. There is no evidence in the record to show that Boyd ever supplied the addresses of Terry Matthews, Thomas Carter, "Carl B", and/or "Rachel" to the Clerk of Court for the purpose of having these defendants served with process by the United States Marshal.

> Under Rule 4(m) of the FRCP:
>
> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period....

FED. R. CIV. P. 4(m). Interpreting this Rule, the United States Court of Appeals for the Fifth Circuit has found that "when a plaintiff fails to serve a defendant within the 120-day period, the

18

district court has two choices:  It may either 'dismiss the action without prejudice ... or direct that service be effected within a specified time.'"  Thompson v. Brown, 91 F.3d 20, 21 (5th Cir. 1996).  "The next portion of the rule qualifies the district court's choices, making an extension of time mandatory when the plaintiff shows good cause."  Id.  See also Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1304 (3d Cir. 1995).

In the present case, the record shows that Boyd was clearly placed on notice that he was required to serve the defendants named in the Complaint, and that a failure to timely serve the defendants would result in their dismissal.  The record additionally shows that while Boyd provided addresses for the purpose of having SEC and KLLM served, he did not provide any addresses for Terry Matthews, Thomas Carter, "Carl B", and/or "Rachel", and did not otherwise attempt to serve these defendants.  Under these circumstances, the Court finds that good cause does not exist for Boyd's failure to have process timely served on Terry Matthews, Thomas Carter, "Carl B", and/or "Rachel" KLLM and, therefore, a mandatory extension of time in which to have process served on these defendants is not warranted under Rule 4(m).  As the record shows that Terry Matthews, Thomas Carter, "Carl B", and/or "Rachel" have not been served with process, and that the Complaint was filed more than 120 days ago, the Court finds these defendants should be dismissed from this case without prejudice in accordance with Rule

19

4(m).

### III. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Plaintiff's Motion for Continuance [Docket No. 48] is hereby denied.

IT IS FURTHER ORDERED that Plaintiff's Motion to Take Judicial Notice [Docket No. 53] is hereby granted.

IT IS FURTHER ORDERED that the Motion of Defendant, Southeastern Career Training Centers, Inc., to Strike Plaintiff's Motion for Partial Summary Judgment [Docket No. 71] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendant, Southeastern Career Training Centers, Inc., for Summary Judgment [Docket No. 37] is hereby granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment [Docket No. 52] is hereby denied.

IT IS FURTHER ORDERED that Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment [Docket No. 55] is hereby denied. A Final Judgment dismissing this case shall be entered this day.

SO ORDERED this the 29th day of May, 2009.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

20